Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/24/2020 08:08 AM CDT

**FTR Farms, Inc., a Nebraska corporation,
appellee, v. Rist Farm, Inc., a Nebraska
corporation, appellant, and Eugene
Wesley Dowell and Mary L.
Dowell, husband and wife,
et al., appellees.**

___ N.W.2d ___

Filed May 1, 2020.    No. S-19-438.

1. **Partition: Equity: Appeal and Error.** A partition action is an action in equity and is reviewable by an appellate court de novo on the record.
2. **Partition.** The purpose of a partition action is to divide a jointly owned interest in real property so that each owner may enjoy and possess in severalty.
3. ____. One of several tenants in common has an absolute right to a partition of their real estate, in the absence of an agreement to, or other impediments to, the contrary.
4. ____. As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity.
5. ____. A sale in partition cannot be decreed merely to advance the interests of one of the owners, but before ordering a sale, the court must judicially ascertain that the interests of all will be promoted.
6. ____. The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole.
7. ____. Owelty addresses a disparity in the value of partitioned parcels and is the payment of money required when property is not susceptible of division into exactly equal shares to make the portions of property respectively assigned to the cotenants of equal value.

8. **Partition: Jurisdiction.** A court acquiring jurisdiction of property for partition acquires complete jurisdiction of the property and affords complete justice to all parties in that action with respect to the subject matter.

9. **Partition: Equity.** In a partition in equity, the court does not act in a merely ministerial character, in obedience to the call of some or all of the parties, but administers relief in such manner as to do equal and exact justice as far as possible.

10. **Partition.** In a partition in kind, where the premises are incapable of a fair division, the court has power to award a pecuniary compensation or charge upon the land.

11. ____. Owelty is predicated upon a division. There can be no owelty in the absence of a division of property.

12. **Partition: Equity.** Owelty should be rarely utilized and only when it is equitably necessary.

13. **Equity: Evidence: Appeal and Error.** In an appeal of an equity action, where credible evidence is in conflict on a material question of fact, an appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than another.

14. **Partition: Presumptions.** While it is generally true that there is a presumption in favor of partition in kind, it is likewise true that the character and location of the property, or the amount of the interest sought to be assigned, or both, may be such that it will be presumed that partition in kind cannot be made.

Appeal from the District Court for Richardson County: JULIE D. SMITH, Judge. Affirmed and remanded for further proceedings.

John Hahn, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellant.

Michael R. Dunn, of Halbert, Dunn & Halbert, L.L.C., for appellees Eugene Wesley Dowell et al.

Jeffery W. Davis, of Smith, Schafer, Davis & Gaertig, L.L.C., for appellee FTR Farms, Inc.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

Cassel, J.

## INTRODUCTION

In this appeal from proceedings to partition real estate, the principal issue is whether partition in kind can be decreed using "owelty"—that is, a monetary payment to equalize values. Because the law has long favored partition in kind, it empowers a court of equity to use that device to accomplish full and complete justice. But the power should be invoked sparingly. Here, we are not persuaded that owelty would enable division in kind without great prejudice to the owners. We affirm the judgment and remand the cause for further proceedings.

## BACKGROUND

### Property and Owners

FTR Farms, Inc., and Rist Farm, Inc., each own an undivided one-half interest in a 311-acre tract of farmland in Richardson County, Nebraska. A winding river—which the record identifies variously as the Nemaha River, Little Nemaha River, or Big Nemaha River—creates a natural divide through roughly the middle of the property.

The river separates the property into two tracts: north and south. The north tract of the property is approximately 135 acres. The south tract is approximately 176 acres. Both tracts have high quality soil, but the north tract's soil is marginally better. A bridge connects both tracts of the property.

In June 2011, FTR Farms and Rist Farm purchased the property from Eugene Wesley Dowell and Mary L. Dowell for $1,750,000. The buyers executed a promissory note to the Dowells for $1,312,500. The difference was paid at or before closing. The Dowells have a purchase money security interest secured by a deed of trust. Prior to the partition action, FTR Farms and Rist Farm each paid half of the annual payment on the promissory note.

### Partition Ownership

In March 2017, FTR Farms filed a complaint for partition of the property, seeking partition by sale. It alleged that the

property could not be partitioned in kind according to their respective interests without prejudice to their rights. In Rist Farm's answer, it alleged that the property could be physically partitioned without great prejudice to the parties. The answer also asserted that partition by sale would be harmful to the parties' farming operations.

On FTR Farms' motion for summary judgment regarding ownership, the district court determined that FTR Farms and Rist Farm were joint owners of the property as tenants in common. The court ordered that partition be made and appointed a referee to recommend whether the property could be partitioned in kind without great prejudice to the owners.

## Partition in Kind

The referee inspected the property. He opined that

physical division of the [property] into two separate, equal tracts would not be possible and would be impractical and detrimental to the value of [the property], and actual partition and division of [the property] between the two owners cannot be made, without great prejudice to the owners or one of them.

He stated that the property should be sold, so that the sale may then be evenly divided between the parties.

FTR Farms and the referee moved to confirm the referee's report and requested sale of the property. At the hearing, FTR Farms and Rist Farm submitted appraisals of the property. FTR Farms' expert appraised the property as irrigated and Rist Farm's expert appraised the property as nonirrigated. This table summarizes the respective appraisals:

| Tract | FTR Farms | Rist Farm |
|---|---|---|
| North | $1,084,668 | $860,000 |
| South | $1,292,925 | $1,075,000 |
| Combined | $2,367,020 | $1,935,000 |
| South − North = | $208,257 | $215,000 |
| Combined − (North + South) = | ($10,573) | 0 |

At the hearing, the referee testified that he recommended partition by sale because the north and south tracts were not

equal in size, the south tract was valued $200,000 more than the north side, and he could not find any other feasible way to divide the property into equal tracts. He explained that "[his] report [was] strictly limited to the notion that if the acres are not exactly the same, it cannot be partitioned."

FTR Farms' president testified that the property was purchased as a whole and should be sold as a whole. He stated he was going through a bankruptcy proceeding and wanted to sell the property to pay off his debts. He believed that he would receive more equity from the sale of the whole property, rather than a sale of half.

At the hearing, Rist Farm argued that the property should be partitioned in kind. It argued that Rist Farm should receive the south tract and that FTR Farms should receive the north tract. Rist Farm indicated that it would be willing "to make up a difference or a boot to equalize the valuation of the properties." Rist Farm's appraiser testified that if the property were sold as a whole versus as a separate parcel, it would have a negative impact. She stated that in her experience, there are fewer bidders for larger parcels because of financing and cost restrictions, whereas the smaller parcels bring more bidders. She recommended that the land be sold as two parcels to get the best price.

Rist Farm's president testified that Rist Farm farmed the south tract and that FTR Farms farmed the north tract. Each party kept their own profits, and each paid half of the yearly payment on the promissory note. He explained that if the property were sold, he would lose his equity in the land, pay capital gains tax, lose his pride because he farmed that land since 1980, and lose a portion of his farming operation, as well as the profits from it. He stated that if partitioned in kind, Rist Farm would prefer the south tract and be willing to pay $215,000 to FTR Farms to equalize the value of the property.

At the hearing, the Dowells stipulated that if the property were divided and money were to change hands as part of the division, the funds paid would be given to the Dowells to

reduce the debt on the less valuable property and new promissory notes would be put in place to protect the Dowells' first lien position. Alternatively, if the property were sold by the referee, the Dowells would be paid in full from the proceeds.

In the district court's order on the motion to confirm the referee's report, it explained that if it were to divide the property in kind, there would be a significant difference in size and value between the parcels. It reasoned that the north tract would be materially less than the money equivalent that could be obtained for FTR Farms' share of the whole. It concluded that "[d]ividing the property in kind would greatly prejudice [FTR Farms.]" It declined to adopt Rist Farm's proposal to award owelty to equalize the difference in value, because "there is a lack of established authority in Nebraska to do so in a situation like this, both in terms of statutes and case law."

The district court found that physical division "cannot be made without greatly prejudicing its owners and that this real estate should be sold at public auction as provided by law." It authorized the referee to sell the property "as one tract, as two separate tracts, or in any manner which might be desirable to prospective buyers."

## Partition Sale and Confirmation

A public auction followed. The referee first solicited bids for the north and south tracts separately. Although the precise high bids for the separate tracts are not in our record, testimony at the confirmation hearing disclosed that the total of the highest bids for the individual tracts was $1.6 million and that the high bid for the south side was either $920,000 or $940,000. The referee then offered the whole property, which was bid in for $1.62 million.

The referee moved to confirm the sale. A hearing was held, and the parties adduced evidence. Both FTR Farms and Rist Farm objected to the confirmation of the sale. They argued that the sale price was unreasonable and grossly inadequate. Nonetheless, the district court confirmed the sale.

At the confirmation hearing, the Dowells presented evidence showing that a notice of default had been given to FTR Farms and Rist Farm on November 15, 2018, regarding the debt owed to the Dowells, because FTR Farms had failed to pay its half of the payment due on November 1.

## APPEALS

Both FTR Farms and Rist Farm purported to appeal. The Nebraska Court of Appeals dismissed the appeal for lack of a final order. The district court then held a hearing to determine the remaining issues, namely referee's fees and expenses, attorney fees, supersedeas bond, and oil and gas lease payments. The district court determined the fees and resolved the remaining issues.

From this judgment, Rist Farm then filed a timely appeal. We moved the appeal to our docket.[1]

## ASSIGNMENTS OF ERROR

Rist Farm assigns that the district court erred (1) in determining that it did not have authority to award owelty to make partition in kind equitable, (2) in ordering partition by sale without finding that partition in kind would greatly prejudice both owners, and (3) by failing to consider options for partition in kind other than what was proposed by Rist Farm.

## STANDARD OF REVIEW

[1] A partition action is an action in equity and is reviewable by an appellate court de novo on the record.[2]

## ANALYSIS

We begin with basic, longstanding concepts governing partition actions in Nebraska. Our partition statutes have existed from statehood.[3]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015).

[3] See Rev. Stat. §§ 802 to 844 (1867).

[2] Recently, we have explained: The purpose of a partition action is to divide a jointly owned interest in real property so that each owner may enjoy and possess in severalty.[4] This articulation differs little from its ancient precedent: The object of a partition suit is to assign property, the fee simple title to which is held by two or more persons as joint tenants, or tenants in common, to them in severalty.[5]

[3] One of several tenants in common has an absolute right to a partition of their real estate, in the absence of an agreement to, or other impediments to, the contrary.[6] This also is not a new concept.[7] Here, the parties agree on the necessity of partition. They dispute between partition in kind and partition by sale.

[4] One method is favored over the other. As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity.[8] We have often stated this principle or its equivalent.[9] But we have also acknowledged that the preference can be overcome.[10]

[5,6] Finally, we have said that a sale in partition cannot be decreed merely to advance the interests of one of the owners, but before ordering a sale, the court must judicially ascertain

---

[4] *Zornes v. Zornes, supra* note 2.

[5] *Phillips v. Dorris*, 56 Neb. 293, 76 N.W. 555 (1898).

[6] *Malcom v. White*, 210 Neb. 724, 316 N.W.2d 752 (1982).

[7] See *Windle v. Kelly*, 135 Neb. 143, 280 N.W. 445 (1938).

[8] *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[9] See, *Channer v. Cumming*, 270 Neb. 231, 699 N.W.2d 831 (2005); *Phillips v. Phillips*, 170 Neb. 733, 104 N.W.2d 52 (1960); *Cary v. Armbrust*, 160 Neb. 392, 70 N.W.2d 427 (1955); *Trowbridge v. Donner*, 152 Neb. 206, 40 N.W.2d 655 (1950).

[10] See *Nordhausen v. Christner*, 215 Neb. 367, 338 N.W.2d 754 (1983).

that the interests of all will be promoted.[11] Our statute requires a court to determine whether "partition cannot be made without great prejudice to the owners."[12] The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole.[13] With these principles in mind, we turn to the specific arguments here.

## Owelty Permissible

Rist Farm's first assignment of error attacks the district court's legal conclusion that "there is a lack of established authority in Nebraska to [order an award of owelty to offset the difference in value] in a situation like this, both in terms of statutes and case law." Rist Farm argues that the district court "clearly did have authority to award owelty,"[14] while FTR Farms characterizes this as an "attempt[] to read into our statutes and case law a concept that simply does not exist."[15]

Here, it is not clear whether the district court determined that owelty is never permitted, as FTR Farms argues, or whether owelty was unsuited to the circumstances here. While the court spoke of a "lack of established authority," it also referred to "a situation like this." We reject the notion that owelty has no place in our partition jurisprudence.

[7] Although the term "owelty" appears only once in our reported decisions,[16] it has ancient roots. Under Roman law, property owners used full partitioning remedies, including payments between cotenants to equalize unequal divisions (owelty) and removing and vesting a cotenant's interest in

---

[11] *In re Estate of McKillip, supra* note 8.

[12] Neb. Rev. Stat. § 25-2181 (Reissue 2016).

[13] *In re Estate of McKillip, supra* note 8; *Trowbridge v. Donner, supra* note 9.

[14] Brief for appellant at 15.

[15] Brief for appellee FTR Farms at 7.

[16] See *Staats v. Wilson*, 76 Neb. 204, 107 N.W. 230 (1906).

the property from a cotenancy (allotment).[17] "Owelty thus addresses a disparity in the value of partitioned parcels and is the payment of money required when property is not susceptible of division into exactly equal shares to make the portions of property respectively assigned to the cotenants of equal value."[18] The modern definition of "owelty" is "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property" or "[t]he sum of money so paid."[19]

Most states have recognized or, at one time, employed an owelty award.[20] States that employ an owelty award authorize its use either by common law[21] or statute.[22] Several states have reasoned that the use of an owelty award should be rarely used and only in cases when it is equitably necessary.[23] Only

---

[17] See John G. Casagrande, Jr., Note, *Acquiring Property Through Forced Partitioning Sales: Abuses and Remedies*, 27 B.C. L. Rev. 755 (1986).

[18] 59A Am. Jur. 2d *Partition* § 154 (2015).

[19] Black's Law Dictionary 1279 (10th ed. 2014).

[20] See, generally, 59A Am. Jur. 2d, *supra* note 18 (examining cases across several jurisdictions utilizing owelty award in partition action).

[21] See, e.g., *Sawin v. Osborn*, 87 Kan. 828, 126 P. 1074 (1912); *Waller v. George*, 322 Mo. 573, 16 S.W.2d 63 (1929); *Chesmore v. Chesmore*, 484 P.2d 516 (Okla. 1971); *Updike v. Adams*, 24 R.I. 220, 52 A. 991 (1902).

[22] See, e.g., Ala. Code § 35-6-25 (2014); Cal. Civ. Proc. Code § 873-250 (2015); Idaho Code Ann. § 6-541 (2010); 735 Ill. Comp. Stat. 5/17-105 (2018); Me. Rev. Stat. Ann. tit. 14, § 6515 (2020); Mass. Gen. Laws ch. 241, § 14 (2004); Mich. Comp. Laws § 600.3336 (2013); Minn. Stat. § 558.12 (2018); Miss. Code Ann. § 11-21-33 (2019); Mont. Code Ann. § 70-29-209 (2019); Nev. Rev. Stat. § 39.440 (2019); N.H. Rev. Stat. Ann. § 547-C:22 (2019); N.Y. Real Prop. Acts. Law § 943 (2009); Or. Rev. Stat. § 105.250 (2019); 42 Pa. Stat. and Cons. Stat. Ann. § 1562 (West 2014); Tenn. Code Ann. § 29-27-117 (Supp. 2018); Va. Code Ann. § 8.01-83 (2015); Wash. Rev. Code § 7.52.440 (2017).

[23] See, *Harris v. Johnson*, 42 Ill. App. 3d 751, 356 N.E.2d 1107, 1 Ill. Dec. 825 (1976); *Burns v. Ambler*, 302 Mich. 526, 5 N.W.2d 451 (1942); *Bagg v. Osborn*, 169 Minn. 126, 210 N.W. 862 (1926*)*; *Waller v. George, supra* note 21.

Kentucky has expressly held that an owelty award is in opposition to its partition statutes and, therefore, is not recognized.[24]

[8] Rist Farm concedes that a Nebraska court's authority to award owelty "comes not from statute, as in some jurisdictions, but rather is inherent in its broad equitable powers."[25] In Nebraska, a court acquiring jurisdiction of property for partition acquires complete jurisdiction of the property and affords complete justice to all parties in that action with respect to the subject matter.[26]

A brief digression is necessary. For most of Nebraska's history, its probate courts lacked jurisdiction of partition actions, even where the real estate was the property of a decedent's estate.[27] For that reason, all of Nebraska's partition litigation originated in a district court until relatively recently.[28]

We have used the term "owelty" only one time—in *Staats v. Wilson*.[29] There, we rejected a collateral attack upon a prior partition judgment, stating that "[t]he conduct of the widow and the heirs regarding the homestead amounted to a partial parol partition of the land with *owelty*."[30] Thus, we used the term consistently with the definition, but as a description and not as a form of relief.

But without using the term "owelty," we have implemented equalization payments in two cases involving partition of real estate. One case is ancient; the other quite recent.

In *Lynch v. Lynch*,[31] the heirs of a 66-foot-wide platted lot in Omaha, Nebraska, sought partition of three undivided interests: one-sixth, one-third, and one-half. The property was

---

[24] *Wrenn v. Gibson*, 90 Ky. 189, 13 S.W. 766 (1890).

[25] Brief for appellant at 16.

[26] See *Fairley v. Kemper*, 174 Neb. 565, 118 N.W.2d 754 (1962).

[27] See *In re Estate of Kentopp. Kentopp v. Kentopp*, 206 Neb. 776, 295 N.W.2d 275 (1980).

[28] See *id.*

[29] *Staats v. Wilson, supra* note 16.

[30] *Id*. at 210, 107 N.W. at 232 (emphasis supplied).

[31] *Lynch v. Lynch*, 18 Neb. 586, 26 N.W. 390 (1886).

partitioned in kind: The one-half interest heir received the east 44 feet of the property and the one-third interest heir received the west 22 feet. The value of the one-sixth interest and one-half of the property's rents were charged as a lien upon the east 44 feet. The sole question on appeal was whether the district court had the power to render the monetary judgment to equalize the division in kind.

[9,10] In holding that it did, we articulated two principles. First, in a partition in equity, "the court does not act in a merely ministerial character, in obedience to the call of some or all of the parties, but administers relief in such manner as to do equal and exact justice as far as possible."[32] Second, in a partition in kind, "where [the] premises are incapable of a fair division[,] the court has power to award a pecuniary compensation or charge upon the land."[33] Thus, without using the term, we recognized the concept of owelty.

Much more recently, in *In re Estate of McKillip*,[34] we implemented an owelty award without using the term. Three heirs inherited four tracts of land and cash. Only two of the four tracts were contiguous. After a partition by sale, an appeal was taken. We reversed, holding that the property should be partitioned in kind by one heir receiving the two contiguous tracts and each of the other heirs receiving one of the remaining tracts. We granted complete relief by fashioning a remedy for the unequal division of land using cash from the remaining estate to equalize the value in the division. This met the definition of owelty: a pecuniary sum given to a party receiving a smaller valuation of land to equalize the distribution.

For the sake of completeness, we note that we have implemented a partition in kind of promissory notes.[35] In that case, we directed the district court upon remand to implement an equalization payment as necessary.

---

[32] *Id*. at 592, 26 N.W. at 393.

[33] *Id*.

[34] *In re Estate of McKillip, supra* note 8.

[35] See *Zornes v. Zornes, supra* note 2.

[11,12] These cases teach that owelty is permitted in partition cases. But it has been used sparingly and only in particular circumstances. With respect to real estate, we have employed the concept only twice in a century and a half. We agree with a Minnesota court that "[o]welty is predicated upon a division. There can be no owelty in the absence of a division of property."[36] And we agree with the many states stating that owelty should be rarely utilized and only when it is equitably necessary.[37] That owelty is permitted does not answer the question whether it was appropriate here. We now turn to that question.

### PARTITION IN KIND OR BY SALE

Rist Farm next assigns that the district court erred in ordering partition by sale without finding that partition in kind would greatly prejudice both owners. In making this argument, Rist Farm relies upon the use of owelty to equalize the difference in value between the tracts on each side of the river.

[13] In our de novo review of this question, we accord some deference to the district court. In an appeal of an equity action, where credible evidence is in conflict on a material question of fact, an appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than another.[38]

We also note that we have the advantage of hindsight in that our record includes the actual sale price and some information regarding the bidding at the partition sale. In *Trowbridge v. Donner*,[39] where we reversed a partition by sale and mandated partition in kind, we considered the sale results in assessing whether partition in kind would greatly prejudice the

---

[36] *Bagg v. Osborn, supra* note 23, 169 Minn. at 129, 210 N.W. at 863.

[37] See, *Harris v. Johnson, supra* note 23; *Burns v. Ambler, supra* note 23; *Bagg v. Osborn, supra* note 23; *Waller v. George, supra* note 21.

[38] *Siedlik v. Nissen*, 303 Neb. 784, 931 N.W.2d 439 (2019).

[39] *Trowbridge v. Donner, supra* note 9.

owners. We follow that precedent and take the sale results into consideration.

[14] We have already set forth the governing principles favoring partition in kind and prohibiting partition by sale to advance the interests of one owner, and articulating the test for determining whether a partition in kind would result in great prejudice to the owners. We do not repeat them here. But we also recognize that while it is generally true that there is a presumption in favor of partition in kind, it is likewise true that the character and location of the property, or the amount of the interest sought to be assigned, or both, may be such that it will be presumed that partition in kind cannot be made.[40]

Whether partition in kind will result in great prejudice to the parties requires comparing two amounts.[41] The first is the amount an owner would receive if the property were divided in kind and the owner then sold his portion of the property.[42] The second is the amount each owner would receive if the entire property were sold and the proceeds were divided among the owners.[43] If the first amount is materially less than the second amount, great prejudice has been shown.[44]

FTR Farms' president testified that the sale of the whole would bring a greater price than the sum of the sales of the separate tracts. Rist Farm's appraiser, on the other hand, opined that sales of the separate tracts would bring more bidders and "would be the best at trying to get the most for the two pieces." We give weight to the district court's observation of the witnesses and its implicit credibility assessment in favor of FTR Farms. Moreover, the sale results support FTR Farms' president's opinion. The highest bids for the individual tracts totaled $1.6 million, but the entire tract sold for $1.62 million. We cannot characterize this difference as immaterial.

---

[40] *Nordhausen v. Christner, supra* note 10.

[41] *In re Estate of McKillip, supra* note 8.

[42] *Id.*

[43] *Id.*

[44] *Id.*

Owelty cannot solve the problem resulting from the whole property selling for a greater price than the high bids for the individual tracts. Bearing in mind the *In re Estate of McKillip* explanation of the calculations regarding the test to determine great prejudice, we illustrate the problem.[45] To determine the first number of the great prejudice test—the amount the owner of each tract would receive if divided in kind and then sold— we use the high bids for the individual tracts, which the record shows totaled $1.6 million. We use the higher number related by Rist Farm's president: $940,000 for the south and, by calculating the corresponding amount, $660,000 for the north. To determine the second number—the amount each would receive from the sale of the whole and the division of proceeds—we divide the sale price of $1.62 million equally, which is $810,000 apiece. Thus, Rist Farm would receive $130,000 more by selling the south tract than its share from the sale of the total property. FTR Farms, on the other hand would receive $150,000 less from the sale of the north tract than its share of the sale of the total. In other words, owelty of $130,000 (Rist Farm's "excess" from sale of the south tract) would greatly prejudice FTR Farms by $20,000—the amount by which the sale of the whole exceeded the sale of the tracts. Owelty of $140,000 would prejudice both parties equally, by $10,000. The great prejudice to FTR Farms can be eliminated, but only if the owelty is $150,000. This, however, would greatly prejudice Rist Farm by $20,000—again, the amount by which the sale of the whole exceeded the sale of the tracts. This table shows the calculations:

|                           | Whole       | South     | North       |
|---------------------------|-------------|-----------|-------------|
| Individual tract high bids | $1,600,000 | $940,000  | $660,000    |
| Equal division of whole   | $1,620,000  | $810,000  | $810,000    |
| Excess or shortage        | ---         | $130,000  | ($150,000)  |
| Owelty of $130,000        | $1,600,000  | $810,000  | $790,000    |
| Owelty of $140,000        | $1,600,000  | $800,000  | $800,000    |
| Owelty of $150,000        | $1,600,000  | $790,000  | $810,000    |

[45] See *id.*

If we use Rist Farm's president's alternative amount of $920,000, the prejudice remains with slightly different numbers. This table shows those calculations:

|  | Whole | South | North |
|---|---|---|---|
| Individual tract high bids | $1,600,000 | $920,000 | $680,000 |
| Equal division of whole | $1,620,000 | $810,000 | $810,000 |
| Excess or shortage | --- | $110,000 | ($130,000) |
| Owelty of $110,000 | $1,600,000 | $810,000 | $790,000 |
| Owelty of $120,000 | $1,600,000 | $800,000 | $800,000 |
| Owelty of $130,000 | $1,600,000 | $790,000 | $810,000 |

No matter what owelty payment is used, great prejudice results to either one or both of the parties.

And we cannot disregard the effect of the default by FTR Farms and Rist Farm regarding the 2018 payment due to the Dowells. The default apparently places both tracts at risk of a trustee's sale, making it quite difficult to retroactively mandate a partition in kind. The bankruptcy proceeding, which, in some way not clear from the record, relates to FTR Farms, introduces more uncertainty into the partition action.

Ultimately, we are not persuaded that this is a rare circumstance where owelty should be utilized and is equitably required. It differs from the situation in *In re Estate of McKillip* in important ways.[46] In that case, "[t]here was no dispute as to the value of the real estate, and there was no claim that the value of the real estate as one parcel was greater than the value of the sum of the individual tracts."[47] Here, the values were disputed and there was a claim that the value of the whole exceeded the sum of the parts. There, the tracts were not all contiguous. Here, both were. Here, the disparity in the sizes of the tracts made conflict over the amount of owelty inevitable. There, the differences in undisputed values could be equalized from the balance of the inherited estate. Here, owelty would require a payment from one owner to the

---

[46] See *id.*

[47] *Id*. at 376, 820 N.W.2d at 877.

other, placing them in irreconcilably conflicting positions, particularly where one owner was somehow involved with a bankruptcy.

In the district court, Rist Farm did not contend that an equal division without owelty was possible. And the record makes it clear that even with owelty, partition in kind could not be made without great prejudice to one or both of the owners.

Upon our de novo review, we conclude that FTR Farms sustained its burden to establish that partition in kind could not be had without great prejudice. It follows that a partition in kind was not feasible and that the district court did not err in accepting the referee's report and ordering partition by sale.

## PARTITION IN KIND ALTERNATIVES

Rist Farm argues that the district court erred by failing to consider all reasonable options for partition in kind before partition by sale. It contends that the district court only considered the options it proposed to the court and did not consider alternative options to partition that property into equal tracts.

Rist Farm relies upon *In re Estate of McKillip* for the proposition that the court must consider all alternative methods to partition in kind before partition by sale can be ordered.[48] This argument is flawed. In *In re Estate of McKillip*, we reversed the district court's order to partition by sale, because the party seeking the sale did not prove that partition in kind would greatly prejudice the owners. Here, FTR Farms satisfied its burden of proof.

Moreover, neither party presented evidence regarding a division other than one based on the Nemaha River. At this point, an argument for an alternative division in kind rests upon pure speculation. This assignment also lacks merit.

## CONCLUSION

The district court did not err in rejecting the owelty award and finding that partition in kind would cause great prejudice

---

[48] See *In re Estate of McKillip, supra* note 8.

to the owners. Accordingly, we affirm the district court's order imposing partition by sale. We recognize that the default of the 2018 payment to the Dowells and the effect of other payments or defaults regarding that indebtedness not shown in our record may affect the ultimate distributions to the parties. Upon remand, the district court may make the adjustments necessary to achieve complete justice to the parties.

AFFIRMED AND REMANDED FOR
FURTHER PROCEEDINGS.